Whitman, J".
The facts sufficiently appear in the opin- . ion and the bill of exceptions. The 'following is the bill of exceptions:
“ Thereupon, on 2d day of December, a. d. 1870, there was filed in the office of the clerk of the court aforesaid, a bill of exceptions, clothed in the words and figures following, to writ:
“ Be it remembered that, upon the trial of this case, at the November term, A. D. 1870, the plaintiffs, to maintain the issue upon their part, offered Thomas D. Mitchell as a witness, who testified that he was a magistrate, in Dayton, in 1869, and that the arrest of the plaintiff' was made by a warrant issued by him. Trial was had before him June 22, a. d. 1869, when the plaintiff, Mrs. Bridgman, was discharged. The plaintiff then offered in evidence the record of the trial before the said T. D. Mitchell, of which a true copy is hereto annexed and made a part of this bill of exceptions, marked ‘A.’ The defendant objected, but the court permitted the record to go in evidence, and the same was read to the jury; to all which the defendant excepted and prayed that his exception might be made a part of the record. And thereupon the plaintiffs, further to maintain the issue upon their part, having given testimony tending to prove what John John had-testified to on the trial, asked of said T. D. Mitchell the following question :
“£ State whether any other evidence was offered by John John in that case against Mrs. Bridgman V To which the defendant objected, and the question was allowed to be put and answered. And thereupon the witness answered: £ There was no other testimony offered against her except that of Mrs. Newcomb/ To all which the defendant ex *29 cepted. And thereupon the plaintiff, Mrs. Elizabeth Bridgman, was sworn in her own behalf, and the following question was pnt to her:
“ ‘ State what evidence, if any, either of John John or any other person, was offered by the prosecuting witness against you before the magistrate.’ To which question the defendant objected, but the court permitted the answer to go to the jury, as follows : ‘ No testimony was introduced against me.’ To which answer the defendant excepted, as well as to the question. The further question was then put to said plaintiff: ‘ State the testimony of Mrs. Newcomb, who was called by John John for the state.’ To which question the defendant objected, but the objection was overruled, and the plaintiff was permitted to testify as follows : ‘ The question was then asked of Mrs. Newcomb if she had heard me make any threats against John John. She then answered no. But she had heard Esther Bridgman say that I had said to her — ’ (And here the lawyers interposed, and she gave no further testimony.) To which question and answer the defendant objected, the said Mrs. Newcomb being at that time in the court-room, attending upon the trial of this cause, but not yet examined as a witness, but the question and answer were permitted to go to the jury; to all of which the defendant excepted. And thereupon the plaintiffs called Frank Eury, who was a co-defendant in the ease of arrest, to whom the following question was put. Objection made by defendant, and overruled. Exception taken.
“ ‘ State what evidence, if any, was produced against Mrs. Elizabeth Bridgman on the trial before Esquire Mitchell.’ And said Eury answered: ‘ No evidence that I heard of. Her name was not mentioned over twice. Did n’t hear of any threats by her beiDg proven. There was nothing in the testimony of John John to implicate Elizabeth Bridgman.’
“And thereupon, further to maintain the issue, the plaintiff offered Thomas Bridgman, and put the following question to him:
*30 “ ‘ State what testimony was produced against Mrs. Bridgman on the trial before Mitchell.’ To which objection was made, overruled, and exception taken. And said witness was permitted to answer said question, ‘that there was no testimony to implicate her that he heard of.’
“ There was no testimony offered or introduced by the plaintiff' to show that the witnesses who were examined before' the magistrate were dead, absent, or without the jurisdiction of the court, said witnesses being all present in court, or within the jurisdiction of the court, but not examined by the said plaintiffs in this case.
“And thereupon the defendant entering upon his case, and the plaintiff having given evidence tending to show ill-feeling and ill-will existing between the plaintiffs and defendant, because the father of tké defendant had died leaving a will preferring the defendant and some others to the other heirs, and that the said plaintiff, Asa Bridgman, would have been an heir but for the provisions of said will; and counsel for defendant, upon cross-examination of plaintiff', having received answer that other heirs of said Asa John, testator, particularly T. J. John, had had difficulties with the defendant about said will, the defendant offered said will in evidence, a copy of which is hereto attached, for the purpose of showing, by the said will, its provisions, and of enabling the jury to ascertain what class of heirs were interested in having said will set aside, and what class, if any, were interested in having it sustained, the defendant having in his possession a threatening letter which he had received, and which was offered in evidence, and read to’the jury, of which the following is a copy:
“ ‘ J. John, Sir :
“ ‘ You claim all of that estate ; well if you think it is yours it is all rite but it wont do you any good for your life is not safe neither is your wifes so if you deem your lifes worth anything you had better lay that will aside and let each one have thare share unless you do your life is not safe a month, so you had better hurry and the house and barn will be laid in ashes so you had better hurry if this is *31 not enough you will hear from me soon again. I will wait for a while be breaf.
To John John.
there was a revolver loaded for you once and the next time it will be tried on you the devil began this work and he will finish it.’
“ But the court ruled out said will, to which exception was taken. And thereupon, the defendant being upon the stand, as a witness in his own behalf, the counsel for him put the following question:
“£ State the nature of the difficulty between you and your brother, Thomas J. John, and state whether that difficulty related to setting the will aside, or whether he desired the same be carried out; and whether the difficulty grew out of your failure to set aside the will, or your failure to carry out its provisions.’ To which question plaintiff objected, and the objection was sustained; to which defendant excepted.
“And said defendant, John John, being upon the stand, and, having given testimony among other things, that one Yalentine Fries had communicated to him prior to beginning his prosecution before Mitchell, language of a threatening character, used by Asa Bridgman, plaintiff, the plaintiff’s counsel, on cross-examination, put the following question, to which objection was made by the defendant:
“£ State whether, on the trial before Esquire Mitchell, Yalentine Fries testified as to any threats made by Mr. Bridgman, plaintiff.’ To which objection was made, but the defendant was required to answer the same; to which tjie defendant excepted, the said Yalentine Fries not having been examined in this cause in this court, or given any testimony as to what he had said.
“ Thereupon the defendant called Jacob L. Ridenour, and Ridenour, his son, relatives of the defendant, who testified that the Opera House fire was May 16,1869, and the "Witherup House fire a week or so later ; that shortly after this fire they had a conversation with Frank Eury, who was then married to a sister of Asa Bridgman, plaintiff, which *32 conversation was reported by the elder Ridenour to said defendant, prior to his instituting suit against Mrs. Bridgman. And the defendant offered to prove, by said witnesses, that a conversation of a serious and not a joking nature took place, as follows :
* £££ Shortly after the Opera House and Witherup House fires in Dayton, my father and myself met Francis Eury in Mr. Prugh’s store, in Dayton. Jacob L. Ridenour and he began talking about these fires. Eury then said that there would likely be another fire before long. My father then said,££ why ? ” He answered there was a letter found to that effect; that there would be a fire at John John’s, if the estate was n’t settled the way they wanted it. And if the house and barn was fired, John John and his wife would be afraid to come out for fear of being mobbed or shot.’
££ But the court would not permit said testimony to be given in evidence to the jury; to which the defendant excepted.
“And the defendant, upon the stand, in his behalf, Michael P. Nolan, an attorney at law, practicing since 1853, the said Nolan having given evidence tending to show that the defendant had consulted him, and laid all the facts of the case before him as they had been testified to, and that the defendant had followed his advice in instituting the proceeding, the counsel for defendant then put the following question to said witness:
“ 1 State now whether, to your knowledge, Mr. John had any other object or motive in instituting the proceeding before Esq. Mitchell, beyond protecting his person and property ; or whether, so far as your knowledge extends, he acted upon the advice you gave him, for the purpose solely of protecting himself and his property.’ Which question was objected to by plaintiff-; objection sustained, and exception taken.
“And then the further question was put to said witness, as follows : . '
“£ State whether you, in giving him the advice, were actuated by any other object or motive in instituting the pro *33 ceedings before Mitchell, except 'the protection of his person and property.’ To which question objection was made, sustained, and exception taken by defendant.
“And thereupon the defendant having offered testimony, tending to show that the threatening letter was in the handwriting of the plaintiff, Mrs. Bridgman, and that, for the purpose of comparing the same, he had procured a letter purporting to be hers, and which he believed to be in her handwriting, the plaintiff then offered Asa Bridgman, husband of the plaintiff,-Elizabeth Bridgman (she having previously testified), who testified that the supposed letter of Mrs. E. Bridgman, thus procured by defendant, was his handwriting, and not the handwriting of his wife; that he had written the same at her dictation, and in her presence; that the threatening letter was not in the handwriting of his wife; that his said wife could not write, or? at least, that he had never seen her write; that he had had a difficulty with John John, a day or so before the arrest, about his procuring said supposed letter of his wife, said Bridgman having heard that said John had charged his wife with writing said letter; with other testimony important and material to the case of plaintiffs. To all which defendant objected; but said objection was overruled, the defendant objecting, before said witness began to testify, that he was not competent; the said plaintiff, however, gave'no testimony as to any communication between himself and his wife, other than *ks above stated.
“And the defendant having introduced testimony tending to show ill-feeling against him upon the part of Mrs. Bridgman, plaintiff, and having sworn that he suspected her of having written the threatening- letter; and having introduced testimony tending to show that he consulted counsel, by whose advice he procured a letter which he believed to be written by her, and which purported on its face to be hers, and which was then submitted with the threatening letter to three experts, who gave an opinion that they thought the said letters to have been written by the same- *34 person, prior to' the commencement of the prosecution, although they would not swear to it; and the said plaintiff, Mrs. Bridgman, having produced testimony tending to show that she could not write, and that the supposed letter .produced was the handwriting of her husband, he writing for her, and-at her dictation, and signed her name, but not that the defendant was aware of this fact; aud the defendant producing further testimony tending to show that she could write, but if she could not, no member of the family, himself included, was aware of the fact, until she had testified upon the stand, and he was not aware, if it were so, that this procured letter was the handwriting of the husband.. And the defendant having produced his sister, Mrs. Hester Bridgman, mother-in-law of said plaintiff, Mrs. Bridgman had said to her, about the time of the sending of the letter, that Mrs. Elizabeth Bridgman had said to her (Mrs. Hester Bridgman) that if she were in the place of her, or Mrs. Newcomb, she would burn the house down over John John’s head, before he should enjoy the property ; and Mrs. Newcomb having testified further that she told this conversation to Mr. John John, before proceedings were instituted by him, the plaintiffs then produced Mrs. .Bridgman, plaintiff, and Mrs. Hester Bridgman aforesaid, ■who testified that such language had not been used, and had not been communicated to Mrs. Newcomb, but offering no other testimony tending to dispute what Mrs. New-■comb had communicated to John .John. Aud the defendant producing upon the stand counsel who advised him in his proceedings against. Mrs. Bridgman, with testimony' tending to show that he had acted in good faith, and had laid the facts before counsel fairly, and taken his advice, ■and acted accordingly; and the defendant having offered •testimony tending to prove that said Mrs. Bridgman had written the threatening letter, which testimony was. not ■communicated to the defendant at the time he instituted his proceeding, and no testimony being offered by the plaintiffs that they had expended money for counsel fees, ■or any amount stated, and the'testimony of plaintiffs aud *35 the constable being that the warrant was read to said Mrs. Bridgman, but that she was not taken actually into custody, having promised that she would come into the magistrate’s office at the specified hour, with other testimony—
“And thereupon the court charged the jury as follows :
“ The facts which the plaintiff is obliged to establish to your satisfaction, by a preponderance of proof, are : 1. That she has been prosecuted by the defendant, and that the prosecution is at an end. 2. That it was instituted maliciously, and without probable cause. 3. That she has thereby sustained damages. She must show that the prosecution was both malicious and without probable cause. ' If it were malicious and unfounded, but there was probable cause for the prosecution, the action can not be sustained. Probable cause is a reasonable ground for suspicion,supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense of which he or she is charged. It does not depend upon the actual state of the case in point of fact, but upon the honest and reasonable belief of the party prosecuting. It must appear that the defendant knew of the existence of the facts which tended to show reasonable and probable cause, and that he believed that there was danger that the plaintiff' would do him the injury which he stated in his affidavit he feared. Whether he did so believe or not is a matter for you to determine, and even if he did so believe, yet if that belief was induced by his own error, mistake, or negligence, without any occasion given by the party prosecuted, it will not amount to probable cause.
“ Malice in a legal sense, applied to a case like this, is any wrongful act done willfully and purposely to the injury of another. It is not to be considered in the sense of spite or hatred against an individual, but as ah evil intent, from which flows a wrongful and injudicious act, committed without justification, indicating that the party is actuated by an improper motive. You will ask you’’selves con *36 scientiously, are the facts and circumstances that we have found so strong in themselves as to warrant an impartial,, ingenious, and reasonable man, of common capacity, with the caution usually exercised by such a man in the defendant’s situation, but not under the influence of any improper motive, to believe the allegations contained in the affidavit, on which plaintiff was arrested ? If they are sufficient to warrant that belief in such a mind, that conclusion, when deliberately arrived at by you, will terminate your labors in this case
“ In regard to the defense, defendant acted under advice of counsel. The rule is as follows: If the party did not withhold any information from his counsel, with the intent to procure an opinion that might operate to shelter and protect him against a suit, but, on the contrary, if he, being doubtful of his legal rights, consulted learned counsel with a view to ascertain them, and afterward pursued the course pointed out by his legal adviser, he is not liable to this action, notwithstanding his counsel may have mistaken the law. You will understand this rule as protecting the defendant, unless he acted in bad faith or gross negligence. If the suit was malicious, and without probable cause, plaintiff is entitled to indemnity for the peril occasioned in regard to her liberty, for the injury of her reputation, for counsel fees she was obliged to pay in defending herself against the charge, as well as all other expenses necessarily incurred in making her defense.
“To which charge the defendant, by his attorney, excepted, and prayed that this and all the foregoing exceptions may be made a part of the record in this case, which is hereby accordingly done.
“ Witness my hand and seal, this 1st day of December, a. d. 1810.
[seal.] “Thomas 0. Lowe, Judge”
On the 16th of June, 1869, the plaintiff in error filed his affidavit before Thomas D. Mitchell, a j ustiee of the peace for Montgomery county, against the defendants in error *37 and one Frank M. Eury, by which he charged them with having unlawfully and maliciously, and in a menacing manner, threatened him; and also, in said affidavit, declared that he had just cause to fear, and did fear, that they would kill him, burn his dwelling and outhouses, poison his stock, and maliciously destroy his property, other than the buildings above mentioned. Thereupon the usual wari’ant was issued, and all the defendants'brought before the magistrate. On the 22d of June trial was had, and Eury discharged, xxo evidence being offered against him. The defendants in error, upon trial, were adjudged not guilty, and discharged.
The defendants in ei’ror, on the 13th of July, 1869, brought their action against the plaintiff in error in the Superior Court of Montgomery county, for malicious prosecution, so instituted by him before said magistrate.
The petition is in the usual form. The answer, admitting the premises in the petition set forth, denied that he acted with.malice, and alleged that he had probable cause to believe, and did believe, the matters stated in his affidavit. At the December term, 1870, a trial by jury was had, and a verdict rendered against the plaintiff in error for $1,125. A motion for new trial was made and overruled, and judgment was entered upon the verdict, and exception taken.
Various errors are assigned in the admission and rejection of testimony, in the charge to the jury, and in overruling the motion for a new trial. We will consider these in their order.
The first error complained of is in permitting the record of the proceedings had before the magistrate to be given in evidence to the jury by the defendants in error. There was no error in this. The record was competent, if for no other purpose, to" prove by the best evidence the fact of the acquittal and discharge of the defendants in error, and that the prosecution was at an end.
The next error assigned is that the court erred in permitting to go to the jury the testimony of Thomas'D. *38 Mitchell, Prank Eury, Mrs. Elizabeth Bridgman, Thomas Bridgman, and others, as te> what testimony was given by witnesses other than the said John John, plaintiff in error, before said examining magistrate, and the statements of said witnesses as to the effect of all of said testimony so heard by them. '
It is claimed by the plaintiff in error that the testimony so given was incompetent, under the ruling in the case of Richards v. Foulke, 3 Ohio, 52; while the counsel for the defendants in error seem to admit that, if this authority is to govern, the evidence was improper; but they deny that it is good law, and say it is unsupported by the weight of authority, and ask us to disregard it for that reason. We are unable to agree with either counsel in their view of this case, and think the principle therein decided correct.
It was attempted in that case to have the magistrate before whom the examining trial was had rehears^} as a witness to the jury the evidence of witnesses given before him, and the court very properly excluded sueh proof as being merely secondary and hearsay evidence, and held that the witnesses who testified before the justice should have been called to testify to the facts they narrated before him. But this case did not decide that it was incompetent for the plaintiff, in an action for malicious prosecution, to show to the jury that on the examination of the charge for which he was arrested, no evidence was offered by the prosecuting witness in support of the affidavit under which the arrest was made. And it was clearly, competent for the defendants in error to prove by competent witnesses, if they could, that this plaintiff' in error did not before the magistrate offer any proof of his charge. This is an independent fact, and its proof by any one who knew such fact is as legally, admissible as would be evidence by any witness of the time at which the examination began, or of the number and names of the persons who were present, or who testified, and who did not. And it appears by the bill of exceptions that each and all of the-witnesses whose testimony before the jury was thus objected to, simply testi *39 fled to this fact, that no testimony was given by the plaintiff in error, or by others, in support of the charge, or in any way implicating the defendants in error. This is wholly different from testifying to what witnesses had testified to, and so attempting to rehearse their testimony as to facts, which, as is properly declared in 3 Ohio, could only be proved by the witnesses themselves who had testified to them before the magistrate. It js not, as claimed, secondary or hearsay evidence, but is legitimate proof of an independent fact germain to the case.
It was for the plaintiffs below to show want of probable cause and malice. The burden of proof was on them, as the presumption of law is that every prosecution is founded on probable cause, and instituted for the purposes of justice only. That presumption must be overcome by the plaintiffs; and the mere fact of acquittal and discharge by the magistrate was not enough. Other evidence was necessary; and, added to an acquittal and discharge, very slight circumstances are sufficient to cast the burden of proof upon the defendant. Now, to this end, surely the facts, if they could be proved, that the defendant, after making in his affidavit so serious a charge as was made against the plaintiffs, did not, by any witnesses, offer to prove its truth, and that no evidence in support of it was given, were not only germain, but were potent to aid in overcoming the legal presumption, and also as having a strong tendency to prove that the defendant, when he filed his affidavit, had not proper cause to believe, and did not believe, the truth of the charge he had made.
■But it is supposed that it was error to allow the testimony of Eury, who said “ there was nothing in the testimony of John Johb to implicate Elizabeth Bridgman;” and of Thomas Bridgman, who said “ that there was no testimony to implicate her that he heard of.” And it is claimed that this was testifying as to the effect of the evidence. We do not so understand it. It was only a form of words by which the witnesses meant to say that they heard no testimony, or that there was no testimony given3 *40 against Elizabeth Bridgman. But while we think that the testimony to prove that no evidence was given before the magistrate, in support of the charge by the defendant below, clearly competent, we think there was error in the form of the question allowed to be put to Mrs. Elizabeth Bridgman. The question was thus put: “ State what evidence, if any, either of John John or any other person, was offered by the prosecuting witness against you, before the magistrate.” The witness, by this question, was called on to rehearse the evidence given by other witnesses before the magistrate. This, as-we have seen, she was incompetent to do. And the questions put to the witnesses Eury and Thomas Bridgman are equally improper. The question put to the witness T. D. Mitchell avoided this error in form, and properly asked, “ Whether any other evidence was offered?” Tiffs was only asking of the existence of an independent fact. But these errors in the form of the questions afford the plaintiff in error no just ground of complaint; because the answers were not a rehearsal of any testimony, but only to the fact that no testimony had been given iu support of the charge. And the plaintiff in error is not prejudiced thereby.
The next assignment of error is that the court erred in refusing to permit the will of Asa John, deceased, to be read to the jury, and in rejecting the testimony of John John, plaintiff' in error, as to the nature of the difficulty with his<brother, T. J. John.
The plaintiff's below had given evidence tending to show ill-feeling and ill-will existing between the- plaintiffs and defendant, because the father of the defendant had made a will preferring the defendant and others to the other heirs, and that the said plaintiff, Asa Bridgman, would have been an heir, but for the provisions of said will. And the defendant, upon cross-examination of the plaintiff, having received answer that other heirs of Asa John, testator, and particularly T. J. John, had had difficulties with the defendant about said will, the defendant offered said will m evidence, for the purpose -of showing its provisions, and *41 of enabling the jury to ascertain what class of heirs were interested in having the will set aside, and what class, if any, were interested in having it sustained; the defendant having in his possession a threatening letter, which he had received, and which was offered in evidence and read to the jury.
The letter' was as follows:
“ J. John, Sir:
“ You claim all of that estate ; well if you think it is yours it is all rite but it wont do you any good for your life is not safe neither is your wifes so if you deem your lifes worth anything you had better lay that will aside and let each one have thare share unless you do your life is not safe a month, so you had better hurry and the house and barn will be laid in ashes so you had better hurry if this is not enough you will hear from me soon again. I will wait for a while be breaf.
To John John.
there was a revolver loaded for you once and the next time it will be tried on you the devil began this work and he will finish it.”
We think there was error in excluding the will. The defendant had received the letter, and as the evidence sufficiently discloses, had acted upon it. It was not signed, but its language clearly proves that -it was written by. some one who was cut off by the will, and who intended to force the defendant to give up his interest under the will, and who was interested in* having the will set aside. The letter plainly refers to the provisions of the will as the sole ground for the threats to life and property therein named. The defendant had chai’ged Asa Bridgman and his wife, in his affidavit, with threatening his life and property. And, as the evidence discloses, before he commenced the prosecution he had received this letter, and suspected Mrs. Bridgman of having written it, it became of course very important for the defendant to show to the jury, if he could, who was the author of the letter, by proving who was interested to defeat his claims under the will, and whose condition under the will would satisfy the terms of the let *42 ter best. "We think the will was a proper element, in connection with the letter and the other evidence offered by the defendant, to show probable cause for the prosecution, and that he had good reason to believe Mrs. Bridgman was the author of the letter. The will was admissible to show whether the defendant had reasonable ground of suspicion, and acted from well-grounded belief. And we are of opinion that its exclusion was calculated to injure the defendant before the jury, by leaving upon their minds the impression, which the plaintiff had evidently.sought to create by the testimony given by the plaintiff, that other heirs of Asa John, testator, and particularly T. J. John, had had difficulties with the defendant about the will; that the defendant had no better reason to suspect the plaintiff of , writing the letter than he had any other one of the heirs with whom the plaintiff had sworn he had had difficulties about the will. We do not think the will too remote, as claimed, for evidence, but, on the contrary, under the aspect the ease had assumed before the jury, it was perhaps the nearest and best evidence the jury could have had to aid them in the solution of the questions who wrote the letter, and was the defendant sincere in his belief, and had he probable cause to institute the prosecution. But whatever might have been-its effect upon the jury, it is clear that by its exclusion the defendant was prevented from showing to them the falsehood of the plaintiff’s testimony as to the heirs who were said to havd been cut off, and especially T. J. John, who, instead of being, as by the plaintiff testified, ill-treated, was a favored devisee under the will.
The next error assigned, is the rejection of the testimony of Jacob Ridenour and his son. We think the court erred in so rejecting it. This evidence had been communicated to the defendant before he filed his affidavit, and tended to create reasonable grounds of belief that the threatening letter was a real threat, and that he-was in danger from parties dissatisfied with the will.
The next error assigned, is that Asa Bridgman, the hus *43 band of Elizabeth Bridgman, co-plaintiff with him, was not a corqpetent witness.
There was no error in permitting him to testify. The question who are competent witnesses is governed by the law in force at the time of the trial, and by the law of 1870, which was in force then, he was competent.
But the question has been decided by the Supreme Court of Ohio (25 Ohio St. 500, not yet published), and is no longer open for discussion.
It is next assigned for error, that the court refused to allow Mr. Nolan, th.e attorney, to state the motives which actuated the plaintiff in error in instituting the' prosecution, and also his own motives and object in the legal advice by him given. "We think this evidence was properly excluded. The motives could not be proved as such. Eacts alone could be proven, from which motives might be inferred.
The last error we will notice, is the refusal of the court to grant a motion for a new trial.
We think there was error in such refusal for the reasons we have stated.
We do not pass upon the question whether the verdict was against the evidence, because it does not properly arise, the bill of exceptions not purporting to embody all the evidence.
The judgment is reversed, and the cause remanded for further proceedings to the Superior Court of Montgomery county.
Scott, Chief Judge, Day, Weight, and Johnson, JJ., concurred.